UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO. 1:04-CV-396 |
| TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 1:06-CV-317 |
| TRANSAMERICA LIFE INSURANCE COMPANY and WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' (hereinafter, "Transamerica") Motion for Leave to Substitute Damages Expert. (Docket # 258.) Transamerica asks that it be granted leave to procure a substitute for its current damages expert, Mr. James Van Elsen, who was recently sentenced to fifteen months in federal prison and will be unavailable to testify at trial. As will be discussed, Transamerica's Motion will be GRANTED, and it will be permitted to substitute its damages expert. However, the new damages expert will only be permitted to

1

testify about the same subject matter as the prior expert without making any meaningful changes.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 22, 2004, the Plaintiff, Lincoln Life Insurance Company ("Lincoln"), sued Transamerica Financial Life Insurance Company, for infringing its U.S. Patent No. 6,611,815 (the "'815 Patent"). (*See* 1:04-CV-396, Docket # 1.) The '815 Patent relates to a data processing method for administering an annuity product having guaranteed lifetime payments. Similarly, on September 14, 2006, Lincoln sued Transamerica Life Insurance Company and Western Reserve Life Assurance Company of Ohio—sister companies to Transamerica Financial Life Insurance Company—for infringement of the '815 Patent. (*See* 1:06-CV-317, Docket #1.) On July 9, 2007, both cases were consolidated under case number 1:04-CV-396. (Docket # 101.)

After several years of discovery and motion practice, Judge Van Bokkelen stayed the case on April 21, 2009, pending the United States Supreme Court's review of the Court of Appeals for the Federal Circuit's potentially instructive decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), *cert. granted*, 129 S. Ct. 2735 (2009). (Docket ## 243, 244.) The Supreme Court rendered its decision in *Bilski v. Kappos*, — U.S. —, 130 S. Ct. 3218 (2010), on June 28, 2010, and Judge Van Bokkelen lifted the stay during the July 28, 2010, Status Conference. The case is currently set for a two-week jury trial beginning March 14, 2011, and the parties have filed competing motions for summary judgment. (*See* Docket ## 255, 270.)

At the time the stay went into effect, Transamerica had previously retained James Van Elsen to submit expert reports in rebuttal to Lincoln's expert report on damages. (Mot. to Substitute 2.) Mr. Van Elsen crafted three reports dated June 2, 2008, August 8, 2008, and December 2, 2008, and was deposed by Lincoln on August 8, 2008. (Mot. to Substitute 2.) Mr.

2

Van Elsen opined that a reasonable royalty rate for Transamerica's assumed infringement would be no more than 2 basis points (.02%) applied annually to certain policy values associated with specific annuity products, as opposed to Lincoln's expert's proposed reasonable royalty rate of 18 basis points (.18%). (Pl.'s Resp. 1-2.)

Apparently unbeknownst to Transamerica, however, Mr. Van Elsen was convicted of embezzlement in the United States District Court for the Southern District of Iowa on February 12, 2010. *See United States v. Van Elsen*, No. 4:09-cr-96-RP-CFB, Docket # 122 (S.D. Iowa Feb. 12, 2010). Subsequently, and still apparently without Transamerica's knowledge, Mr. Van Elsen was sentenced to fifteen months in federal prison on June 22, 2010. *See id.*, Docket # 159. Transamerica alleges that it only learned of Mr. Van Elsen's legal troubles and eventual incarceration on June 24, 2010. (Mot. to Substitute 2.)

During the July 28, 2010, Status Conference, Transamerica informed the Court of Mr. Van Elsen's unavailability and that it would need to procure a new damages expert. Judge Van Bokkelen ordered the parties to attempt to reach an agreement on substituting a new expert. Although Lincoln apparently agreed that a substitution was warranted, the parties were unable to reach an agreement on the scope of the testimony the new expert could provide. (Mot. to Substitute 3.) Subsequently, Transmerica filed the instant Motion, arguing that there should be no restrictions placed on the testimony of the substitute expert. (Mot. to Substitute 3-5.) Lincoln does not oppose the substitution itself, but maintains that the new expert should be limited to the damage theories and conclusions previously advanced by Mr. Van Elsen. (Pl.'s Resp. 5-11.)

## II. STANDARD OF REVIEW

In determining whether to allow a substitute expert, courts have frequently relied on Federal Rule of Civil Procedure 16(b), and treated the request for a substitute expert as a de facto attempt to alter the scheduling order and enlarge the discovery period. *See Doctor's Assocs., Inc. v. QIP Holder, LLC*, No. 3:06-cv-1710, 2009 WL 5184404, at *4 (D. Conn. Dec. 23, 2009) (citing *Jung v. Neschis*, No. 01 Civ. 6993, 2007 U.S. Dist. LEXIS 97173, at *51-52 (S.D.N.Y. Oct 23, 2007); *Sithon Maritime Co. v. Holiday Mansion*, No. 96-2262, 1998 U.S. Dist. LEXIS 11822, at *4 (D. Kan. July 30, 1998)). Under Rule 16, the court may modify a scheduling order if the party seeking modification shows good cause—that is, despite that party's diligence, the time table could not reasonably have been met. *See United States v. 1948 S. Martin Luther King Drive*, 270 F.3d 1102, 1110 (7th Cir. 2001); *Smith v. Howe Military Sch.*, No. 3:96-CV-790RM, 1997 WL 662506, at *1 (N.D. Ind. Oct. 20, 1997); *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

Even if a substitution is allowed, however, courts generally limit the scope of the testimony that may be given by the substitute expert. "[T]he introduction of a substitute expert does not *ipso facto* permit [the party requesting the substitution] to escape from the concessions or admissions of [the previous expert]." *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 22 (D.P.R. 2009). Rather, the substitute expert's report and testimony is frequently limited to the subject matter and theories already espoused by the former expert. For example, the Court in *Morel* held that the substitute expert "should be able to proceed with his testimony as any other expert would with the caveat that he address the same subject matter as [the prior expert] without meaningful changes." 259 F.R.D. at 22. Similarly, in *Indiana Insurance Co. v. Valmont Electric*,

4

*Inc.*, the Court allowed the substitution of a new expert on the condition that the new expert "have a similar area of expertise and will express only opinions like those previously held by the [prior] expert." No. TH 97-009-C-T/F, 2003 WL 22244787, at *1 (S.D. Ind. July 31, 2003). *See also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003) (finding no error in district court requiring that substitute expert "not deviate from [the prior expert's] conclusions"); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2007 U.S. Dist. LEXIS 99057, at *8 (E.D. Ky. Apr. 5, 2007) ("This substitution was intended to put the plaintiffs in as good a position as they would have held had [the prior expert] performed his job as expected; it was not intended to allow the plaintiffs to designate a superior . . . expert after the deadline for expert disclosures."); *Dunkin' Donuts, Inc. v. N.A.S.T., Inc.*, No. 02 C 1272, 2005 U.S. Dist. LEXIS 16703, at *2 (N.D. Ill. Aug. 10, 2005) (rejecting an "entirely new" substitute report with "major differences" that "re-invented the wheel").

Although the substitute expert's testimony and report are generally restricted to the same subject matter as the prior expert, the substitute is not normally required to simply adopt the prior expert's conclusions verbatim—in effect, doing little more than authenticating and confirming the prior expert's conclusions. Rather, the substitute expert "should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform." *Morel*, 259 F.R.D. at 22. *But see Doctor's Assocs., Inc.*, 2009 WL 5184404, at *5 ("[The substitute expert's] testimony at trial will be limited to establishing the veracity and integrity of [the prior expert] and the conclusions reached in [the] original expert report.").

## III. DISCUSSION

In the present case, Lincoln concedes that Mr. Van Elsen will be unavailable and does not truly dispute that Transamerica should be allowed to procure a new damages expert after the close of discovery. Indeed, good cause exists to allow the substitution—Mr. Van Elsen will be incarcerated in federal prison and, needless to say, unavailable to testify at the trial. *Cf. Morel*, 259 F.R.D. at 19 (allowing substitution after prior expert died); *Doctor's Assocs., Inc.*, 2009 WL 5184404, at *5 (allowing substitution because of prior expert's professional conflict of interest). Accordingly, Transamerica will be granted leave to retain a substitute damages expert.

Lincoln does, however, argue that the testimony and report of Transamerica's substitute expert must be limited in its scope. Specifically, Lincoln claims that the substitute expert should "be restricted by and to the damage theories and conclusions advanced by Transamerica through its prior expert." (Pl.'s Resp. 1.) Lincoln sees Transamerica's desire that there be no restrictions placed on the new expert as an attempt to parlay Mr. Van Elsen's unavailability into an opportunity to introduce completely new theories on damages. (*Id*. at 5-11.)

Transamerica counters that there should be no restrictions on the new expert's report or testimony. It argues that the substitute expert must be permitted to perform an independent analysis and formulate his own opinion. (Defs.' Reply 2, 3.) Transamerica strongly objects to Lincoln's perceived demand that it merely hire a "puppet" expert who will merely be required to adopt the testimony of his predecessor. (*Id*.)

Lincoln's argument that the substitute expert's testimony must be limited in some fashion is persuasive. The unavailability of Mr. Van Elsen does not provide Transamerica with *carte blanche* to generate an entirely new damages theory after approximately five years of litigation

and less than six months from trial. *See Ind. Ins. Co. v. Valmont Elec., Inc.*, No. TH 97-009-C-T/F, 2001 U.S. Dist. LEXIS 23256, at *4 (S.D. Ind. Dec. 27, 2001) ("[A]llowing this supplement is **NOT** an invitation . . . to introduce new and different theories in this case.") (emphasis in original); *Adams*, 2007 U.S. Dist. LEXIS 99057, at *8 (emphasizing that substitution is intended to keep the parties in the same position and not allow the designation of a superior expert). Rather, Transamerica's new expert is required to employ the same general methodology as Mr. Van Elsen—that is, a damages calculation that is based on the factors set forth in *Georgia Pacific Corp. v. U.S. Plywood Co.*, 318 F. Supp. 116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub. nom.*, *Georgia Pacific Corp. v. U.S. Plywood-Champion Paper, Inc.*, 446 F.2d 295 (2d Cir. 1971).

To avoid the inevitable prejudice that would result if entirely new damages theories were introduced a mere six months from trial, some limitations must be placed on the report and testimony of the substitute expert, who has not yet been selected. The substitute expert must have "a similar area of expertise" as Mr. Van Elsen and will be permitted to conduct his own investigation and reach his own conclusions, as long as he addresses the same subject matter as Mr. Van Elsen's report without meaningful changes. *Morel*, 259 F.R.D. at 22; *Ind. Ins. Co.*, 2003 WL 22244787, at *1. That is not to say, however, that the substitute expert merely adopt Mr. Van Elsen's opinion verbatim. Rather, he will be permitted to review all of the evidence, conduct his own independent analysis, and express his opinion in his own words. *Morel*, 259 F.R.D. at 22.

## IV. CONCLUSION

Transamerica has shown good cause to substitute its damages expert after the close of the discovery deadline. The Court therefore GRANTS its Motion for Leave to Substitute Damages Expert. (Docket # 258.) However, the substitute expert will only be permitted to address the same subject matter as the previous expert without making any meaningful changes. If the report and deposition of the substitute expert reveals information outside the scope of the original expert report, Lincoln may accordingly move for its exclusion.

The Court also sets the following schedule for the completion of the remaining expert discovery. Transamerica is to identify its new expert on or before October 29, 2010. Lincoln's expert must issue any supplemental expert report incorporating updated financial documents by November 12, 2010, and Transamerica's substitute expert must issue his or her report by December 10, 2010. January 14, 2011, is the deadline for the completion of depositions of Lincoln's expert and Transamerica's substitute expert. Given the March 14, 2011, trial date, the Court does not anticipate that any extensions of these deadlines will be granted.


SO ORDERED

Dated this 30th day of September, 2010.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge